TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00386-CV







Tanya Mayberry, Appellant


v.


Texas Department of Agriculture, Appellee





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT

NO. 94-01132, HONORABLE JERRY DELLANA, JUDGE PRESIDING





 This case arises out of a dispute over alleged employment discrimination. Tanya Mayberry
appeals the trial court's judgment in one point of error. Appellee, Texas Department of Agriculture (the
"Department") appeals the judgment by two cross-points of error. We will affirm the judgment of the trial
court.


BACKGROUND

 Tanya Mayberry began working for the Department in 1988. In May 1993, she filed a
complaint with the Texas Commission on Human Rights (the "Commission") alleging racial discrimination
and retaliation for giving testimony in a sexual harassment lawsuit. See Commission on Human Rights Act,
68th Leg., 1st C.S., ch. 7, §§ 1.01-10.01, 10.04, 10.05, 1983 Tex. Gen. Laws 37, amended by Act of
May 27, 1985, 69th Leg., R.S., ch. 729, § 39, 1985 Tex. Gen. Laws 2529 (Tex. Rev. Civ. Stat. Ann. art.
5221k, since amended, and repealed by Act of May 12, 1993, 73d Leg., R.S., ch. 269, §§ 1, 5(1), 1993
Tex. Gen. Laws 987 and codified at Tex. Labor Code Ann., Ch. 21). (1) Mayberry alleged the Department
denied her a position reclassification because she testified on behalf of an accused Department employee. 
The Commission gave Mayberry permission to pursue a civil action in district court. See Tex. Rev. Civ.
Stat. Ann. art. 5221k, § 7.01(a). Mayberry filed her lawsuit in early 1994, seeking an injunction, back-pay, pre- and post-judgment interest, a report to the court, court costs, and attorneys' fees. 

 Mayberry also alleged that the Department further discriminated and retaliated against her
after she filed her lawsuit. She amended her pleadings to allege the additional offensive conduct, specifically
that the Department delayed giving her a performance evaluation and ultimately gave her evaluations that
were lower than her previous evaluations. Mayberry argued she did not receive merit pay increases she
would have received had it not been for the Department's retaliatory actions. Then, two weeks before trial
in 1995, Mayberry again amended her pleadings to seek additional remedies of compensatory damages
for mental anguish and emotional distress. The Department specially excepted to Mayberry's pleading for
compensatory damages, contending that the statute creating Mayberry's cause of action did not allow
recovery of compensatory damages. See id. § 7.01(c), (d), & (e) (since amended). The record does not
reveal that the exceptions were filed before trial or that the trial court ever expressly ruled on the
Department's special exceptions.

 At trial, Mayberry presented evidence of the Department's allegedly discriminatory and
retaliatory conduct. Mayberry also presented evidence of damages the Department owed her in the form
of back pay. When Mayberry attempted to testify about the extent of her mental and emotional damages,
the Department successfully objected on the same ground it asserted in its special exceptions. Mayberry
then made a bill of exceptions, which established her alleged mental and emotional damages.

 The trial court charged the jury with answering questions about racial discrimination,
unlawful retaliation, and back pay. The jury returned a verdict in favor of Mayberry on the theory of
unlawful retaliation; they determined that Mayberry was entitled to $1,206 in back-pay. The Department
moved that the court disregard the jury findings based on insufficiency of the evidence. The trial court
denied the motion and rendered judgment for Mayberry in the amount of $1,206. After a hearing, the court
also awarded Mayberry attorneys' fees, costs of court, and pre-and post-judgment interest. 

 Mayberry now appeals in one point of error the trial court's refusal to allow her to testify
about the extent of her mental and emotional damages. The Department cross-appeals in two points of
error the sufficiency of the evidence supporting the jury's verdict.


DISCUSSION

Availability of Compensatory Damages

 Mayberry faults the trial court for refusing to allow her to introduce evidence of
compensatory damages. Read literally, Mayberry's point of error challenges an evidentiary ruling of the
trial court, which the Department contends we should review only for an abuse of discretion. See Landry
v. Travelers Ins. Co., 458 S.W.2d 649, 651 (Tex. 1970). The trial court's ruling, however, was not
purely an evidentiary ruling; it was effectively a ruling on the Department's special exceptions, an issue of
law. We review a trial court's determination of this issue of law de novo. Detenbeck v. Koester, 886
S.W.2d 477, 479 (Tex. App.--Houston [1st Dist.] 1994, no writ).

 Whether or not the trial court erred depends on whether the statute creating Mayberry's
cause of action afforded her a right to seek compensatory damages in addition to back-pay. When
Mayberry filed her complaint with the Commission in May 1993, article 5221k was in effect. At that time,
the statute allowed courts to award only equitable relief for unlawful employment practices. See art. 5221k,
§ 7.01(c), (d), & (e). However, the legislature amended the statute in September 1993 to allow recovery
of compensatory damages as well. See Act of May 14, 1993, 73d Leg., R.S., ch. 276, § 7, 1993 Tex.
Gen. Laws 1291 (since repealed and codified at Tex. Lab. Code Ann. § 21.2585 (West 1996)) ("1993
amendment"). Mayberry concedes that the remedies afforded by the 1993 amendment are not available
with respect to the conduct alleged in her May 1993 complaint. The 1993 amendment does not apply to
that conduct because the legislature expressly stated the amendment applied "only to a complaint filed with
the Commission on Human Rights on or after [September 1, 1993]." See 1993 amendment § 9; see also
Tex. Gov't Code § 311.022 (West 1988) (statutes are presumed to be effective prospectively unless
legislature expressly states otherwise). However, Mayberry argues she should be able to recover
compensatory damages resulting from the additional retaliatory conduct she alleged in her amended
pleadings because the conduct occurred after the 1993 amendment. 

 The Department, on the other hand, argues Mayberry is not entitled to recover
compensatory damages for the post-amendment conduct because she never filed a complaint with the
Commission based on that conduct after the amendment took effect. We agree with the Department. 

 In order for Mayberry to avail herself of the remedies afforded by the 1993 amendment,
she would have had to file a complaint alleging the new conduct after September 1, 1993, the date the
amendment took effect. The only time Mayberry ever filed a complaint with the Commission was in May
1993; obviously the post-amendment conduct was not included in that complaint because the conduct had
not yet occurred.

 Mayberry argues the conduct alleged in her amended pleadings should "relate back" to her
original complaint with the Commission. That is, Mayberry argues additional complaints of retaliation after
an employee has filed a lawsuit need not be raised in a separate complaint to the Commission, but instead
come within the trial court's ancillary jurisdiction. Mayberry cites federal authority interpreting the federal
counterpart to article 5221k. See 42 U.S.C. §§ 2000e-1 - 2000e-17 (West 1994 & Supp. 1997);
Gottlieb v. Tulane Univ. of Louisiana, 809 F.2d 278, 284 (5th Cir. 1987). She also cites a Dallas Court
of Appeals opinion following the federal rule. See Turner v. Richardson I.S.D., 885 S.W.2d 553, 560
(Tex. App.--Dallas 1994, writ denied). Neither case addresses the issue before us.

 In Gottlieb, the plaintiff alleged in her initial complaint that her employer had discriminated
against her on the basis of gender. After trial and while the district court was considering her case, Gottlieb
asked the court to reopen the case for consideration of new retaliation claims. The district court ruled that
it had no jurisdiction over her retaliation claims because she had not first filed them with the Equal
Employment Opportunity Commission ("EEOC"). See Gottlieb, 809 F.2d at 284. The Fifth Circuit
reversed the district court, holding the district court had ancillary jurisdiction over the retaliation claims. The
Fifth Circuit reasoned that to require Gottlieb to file a separate EEOC complaint on the retaliation claims
would have constituted a mere procedural technicality. Id. 

 In Turner, the plaintiffs filed several complaints with the Commission about the same
employer, some of which alleged unlawful retaliation. Some of the retaliation claims were finally
adjudicated in a federal lawsuit. The Turners then attempted to raise some of the same retaliation claims
in state court. The Dallas Court of Appeals cited the Gottlieb decision in noting that the Turners had
attempted to raise their retaliation claims earlier in their federal lawsuit. See Turner, 885 S.W.2d at 560. 
The court then held the Turners's state retaliation claims were barred by res judicata. Id. 

 Unlike Mayberry, neither the plaintiff in Gottlieb nor the plaintiffs in Turner attempted to
secure new remedies upon amendment of their initial claims. Gottlieb dealt with the limited issue of whether
a court can entertain retaliation claims that are "tacked onto" discrimination claims without first being the
subject of administrative complaints. The Turner court went further to address the effect of a plaintiff's
attempt to litigate such retaliation claims anew. The Department in the case at bar does not dispute that
the district court had jurisdiction over Mayberry's retaliation complaints. Neither does the Department
contend that Mayberry's claims are barred by res judicata. The Department disputes that a different law
should control the "tacked on" retaliation complaints, an issue not raised in either Gottlieb or Turner.

 Mayberry essentially requests us to piggyback the retaliation claims on the original
complaint for some purposes, like conferring jurisdiction, but not another, namely determining what law
governs. Although we agree that the trial court had jurisdiction over Mayberry's retaliation claims, we find
no authority for the proposition that post-complaint retaliatory claims should be governed by the
prospective statutory amendment that became effective after the original complaint. In light of the absence
of a post-statutory-amendment complaint to the Commission, the trial court correctly refused to allow
Mayberry to introduce evidence of mental and emotional damages. We overrule Mayberry's point of
error.


Sufficiency of the Evidence

 We turn to the Department's contention that the jury's verdict is not supported by legally
sufficient evidence. The Department first contends in cross-point of error one that the evidence does not
support the jury's finding that the Department retaliated against Mayberry. In order to establish a prima
facie case of retaliation, Mayberry was required to prove (1) she engaged in a protected activity, (2) the
Department took an adverse employment action against her, and (3) the Department took the adverse
action because of her engagement in the protected activity. See Barrow v. New Orleans S.S. Ass'n, 10
F.3d 292, 298 (5th Cir. 1994). (2) The Department contends there is no evidence in the record supporting
the jury's determination of either the second or third elements of the retaliation analysis. 

 In determining whether the evidence legally supports the verdict, we consider only the
evidence and inferences tending to support the jury's finding and disregard all evidence and inferences to
the contrary. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995). We will uphold the
jury's finding if more than a scintilla of evidence supports the finding. Id.

 We conclude the evidence is legally sufficient to support the jury's determination that the
Department took an adverse employment action against Mayberry because she filed a complaint with the
Commission. The record reveals that after Mayberry filed her original discrimination complaint with the
Commission, she received lower employee evaluation marks than she had in previous years. Furthermore,
the record reveals that one of these employee evaluations was delayed five months past the date it was due. 
A Department representative testified that he told Mayberry's supervisor not to compile Mayberry's
evaluation when it was due because of her pending complaint with the Commission. He also admitted that
Mayberry could not be eligible for a merit pay increase unless she had a current evaluation. 

 The Department contends these actions do not constitute adverse employment actions
because they did not negatively affect Mayberry's salary or benefits. See Dollis v. Rubin, 77 F.3d 777,
781 (5th Cir. 1995); Gustovich v. AT&T Communications, Inc., 972 F.2d 845, 847 (7th Cir. 1992);
cf. Long v. First Union Corp. of Virginia, 894 F. Supp. 933, 944 (E.D. Va. 1995), aff'd, 86 F.3d 1151
(4th Cir. 1996) (poor performance reviews are not necessarily linked to retaliation). We disagree. 

 The testimony of the Department representative reveals that some of the Department's
actions made it impossible, at least for some period of time, for Mayberry to be considered for a pay
increase. Furthermore, the evidence reveals the delay was directly tied in part to Mayberry's filing a
discrimination complaint with the Commission. The jury could reasonably have inferred that the low
evaluation scores were also tied to Mayberry's having filed a complaint. We hold the evidence is legally
sufficient to support the conclusion that the Department took an adverse employment action against
Mayberry. We further hold the evidence supports the conclusion that Mayberry would at least have been
eligible for a raise, and may actually have received one had the Department not postponed her evaluation
based on the pending complaint. Accordingly, we overrule the Department's first cross-point.

 In its second cross-point of error, the Department contends the evidence is not legally
sufficient to support the jury's award of $1,206 to Mayberry. We disagree. 

 Mayberry was due an evaluation in April 1994 but she did not receive one until September
1994. The record supports the inference that but for the Department's retaliation, Mayberry would have
received her evaluation on time. The record also supports the contrary inferences that the Department may
not have delayed the evaluation out of retaliatory motives, or that only part of the delay was caused by
retaliatory motives. In any event, even the late evaluation consisted of scores lower than Mayberry's
previous scores. Furthermore, it is undisputed that Mayberry did not receive a merit raise in 1994.

 The jury could rationally have concluded that Mayberry did not receive a merit raise in
1994 because (1) the Department delayed her evaluation, (2) the Department gave her lower evaluation
scores, or (3) both. In other words, the jury could rationally have believed that but for the Department's
retaliation, Mayberry would have received a merit raise in April 1994, in September 1994, or sometime
in between, depending on the jury's view of the evidence. 

 The jury could then have referred to the salary classification table admitted in evidence to
determine the amount of money Mayberry lost by not receiving a merit raise in 1994. According to the
table, if Mayberry had received a one-step increase in April 1994, (3) she would have earned $1,292 more
than she did for the work she performed from May 1994 (4) through November 1995. (5) If, on the other hand,
the jury decided Mayberry would have received a raise in September 1994, the table would lead them to
conclude the Department owed her $1,028 for the work she performed from October 1994 through
November 1995. The jury's verdict falls almost squarely in between the two numbers.

 The jury has the discretion to award damages within the range of evidence presented at
trial, so long as a rational basis exists for the jury's calculation. See City of Houston v. Harris County
Outdoor Adv. Ass'n, 879 S.W.2d 322, 334 (Tex. App.--Houston [14th Dist.] 1994, writ denied), cert.
den'd, 116 S.Ct. 85 (1995); First State Bank v. Keilman, 851 S.W.2d 914, 930 (Tex. App.--Austin
1993, writ denied). The fact that there is nothing in the record to evidence how the jury arrived at the
specific $1,206 amount is not fatal to the verdict for two reasons.

 First, the verdict is reasonable because of the relative narrowness of the range of numbers
supported by the evidence. That is, the jury's verdict does not differ greatly from either the top end of the
range or the bottom end. See City of Houston, 879 S.W.2d at 335 (evidence established range from
$14.74 to $179.00, within which fee could be reasonable; trial court determined reasonable fee was $40;
appellate court upheld trial court's determination).

 Second, the evidence supported a range of awards, as opposed to two distinct options. 
In other words, the jury was presented with a range of potentially appropriate awards because the evidence
did not clearly establish the length of service for which Mayberry was entitled to back pay. This case is
distinguishable from other types of cases in which the jury is charged with applying a predetermined formula
with no variables or deciding between two clear options. Cf. Keilman, 851 S.W.2d at 931 (evidence
established bank charged either $169.92 or $7,161.44 in interest; jury determined bank charged $360
in interest; this Court reversed the verdict for lack of sufficient supporting evidence). We hold, therefore,
that the jury's determination of damages is supported by legally sufficient evidence. Accordingly, we
overrule the Department's second cross-point.


CONCLUSION

 Having overruled both Mayberry's point of error and the Department's cross-points, we
affirm the trial court's judgment.



 _____________________________________________

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: May 8, 1997

Do Not Publish Released for publication June 19, 1997. Tex. R. App. P. 90(c).
1. The law in effect at the time Mayberry filed her complaint with the Commission was found in
Texas Revised Civil Statutes article 5221k. We will, therefore, refer to article 5221k, despite the fact that
it has been repealed and codified since the commencement of this lawsuit. See Tex. Lab. Code Ann. §§
21.001-.306 (West 1996).
2. We may look to federal civil rights law in interpreting cases brought under the Texas Commission
on Human Rights Act. See City of Austin v. Gifford, 824 S.W.2d 735, 739 (Tex. App.--Austin 1992,
no writ).
3. According to Department records admitted in evidence, the usual merit pay increase is a one-step
increase.
4. The record contains evidence that a merit raise takes effect the month after the corresponding
evaluation is conducted.
5. The trial was held in early December 1995; therefore, the jury might reasonably have calculated
damages based on Mayberry's working through November 1995, the last complete month before trial.



he Department delayed her evaluation, (2) the Department gave her lower evaluation
scores, or (3) both. In other words, the jury could rationally have believed that but for the Department's
retaliation, Mayberry would have received a merit raise in April 1994, in September 1994, or sometime
in between, depending on the jury's view of the evidence. 

 The jury could then have referred to the salary classification table admitted in evidence to
determine the amount of money Mayberry lost by not receiving a merit raise in 1994. According to the
table, if Mayberry had received a one-step increase in April 1994, (3) she would have earned $1,292 more
than she did for the work she performed from May 1994 (4) through November 1995. (5) If, on the other hand,
the jury decided Mayberry would have received a raise in September 1994, the table would lead them to
conclude the Department owed her $1,028 for the work she performed from October 1994 through
November 1995. The jury's verdict falls almost squarely in between the two numbers.

 The jury has the discretion to award damages within the range of evidence presented at
trial, so long as a rational basis exists for the jury's calculation. See City of Houston v. Harris County
Outdoor Adv. Ass'n, 879 S.W.2d 322, 334 (Tex. App.--Houston [14th Dist.] 1994, writ denied), cert.
den'd, 116 S.Ct. 85 (1995); First State Bank v. Keilman, 851 S.W.2d 914, 930 (Tex. App.--Austin
1993, writ denied). The fact that there is nothing in the record to evidence how the jury arrived at the
specific $1,206 amount is not fatal to the verdict for two reasons.

 First, the verdict is reasonable because of the relative narrowness of the range of numbers
supported by the evidence. That is, the jury's verdict does not differ greatly from either the top end of the
range or the bottom end. See City of Houston, 879 S.W.2d at 335 (evidence established range from
$14.74 to $179.00, within which fee could be reasonable; trial court determined reasonable fee was $40;
appellate court upheld trial court's determination).

 Second, the evidence supported a range of awards, as opposed to two distinct options. 
In other words, the jury was presented with a range of potentially appropriate awards because the evidence
did not clearly establish the length of service for which Mayberry was entitled to back pay. This case is
distinguishable from other types of cases in which the jury is charged with applying a predetermined formula
with no variables or deciding between two clear options. Cf. Keilman, 851 S.W.2d at 931 (evidence
established b